UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80966-CIV-MARRA

PURDY LANE, INC.,

Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 24). The Motion is fully briefed and ripe for review.  The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

The facts, as culled from affidavits and exhibits, and reasonably inferred therefrom in the light most favorable to the non-moving party, for the purposes of this motion, are as follows:

Plaintiff Purdy Lane, Inc. ("Plaintiff") asserts a cause of action against Defendant Scottsdale Insurance Company ("Defendant") for breach of contract and declaratory relief, arising out of alleged damages sustained to Plaintiff's insured property as a result of "substantial water damage" that occurred "on or about October 24, 2017." (Compl, ¶ 7, DE 1-1.)  Plaintiff's property, at 4458 Purdy Lane, West Palm Beach, Florida 33406, was insured under Defendant's policy of insurance number CPS2888522. (Id at ¶ 5.)

Plaintiff submitted a report by a technician at Roto-Rooter Plumbing and Drain Services, which described the damage as "raw sewer backup." (Report, Ex. B, DE 24-2.)  Plaintiff also

submitted an invoice, prepared by V.I.P. Construction, LLC, which states in pertinent part:

"Camera sewer lines.  Excavation of driveway and front entry of building approximately 7 feet

deep to locate damaged sewer pipe. Replace the damaged sewer pipe approximately 60 feet

long." (Invoice, Ex. C, DE 24-3.)

For the purposes of this motion, there is no dispute that the source of damage to

Plaintiff's property was a water and/or sewer backup emanating underneath the driveway to the

property. (Def. Statement of Facts ¶ 5, DE 25; Pl. Statement of Facts ¶ 5, DE 26.)  Plaintiff

submitted an estimate, prepared by Northern Inc. Public Adjusters & Appraisers, which states in

pertinent part: "**Type of Loss**: Sewage." (Northern Estimate, Ex. D, DE 24-4.)

The insurance policy contains the following provisions:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A. Coverage**
We will pay for direct physical loss of or damage to Covered Property at the premises
described in the Declarations caused by or resulting from any Covered Cause of Loss.
**1. Covered Property**
Covered Property, as used in this Coverage Part, means the type of property described in
this section, A.1., and limited in A.2. Property Not Covered, if a Limit Of Insurance is
shown in the Declarations for that type of property.
**a. Building**, meaning the building or structure described in the Declarations, including:
**(1)** Completed additions;
**(2)** Fixtures, including outdoor fixtures; **(3)** Permanently installed:
**(a)** Machinery; and
**(b)** Equipment;

**2. Property Not Covered**

Covered Property does not include:
***
m. Underground pipes, flues or drains;


(Policy at p. 13-14, Ex. A to DE 24.)

**CAUSES OF LOSS – SPECIAL FORM**

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

> **1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.**
>
> **e.        Utility Services**
>
> > **The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure . . .**
> > **But if the failure . . . of . . . water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.**
>
> **g.        Water**
>
> **(1) Flood, surface water, waves [], tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);**
>
> **(2) Mudslide or mudflow;**
>
> **(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;**
>
> **(4) Water under the ground surface pressing on, or flowing or seeping through:**
>
> > **(a) Foundations, walls, floors or paved surfaces;**
> >
> > **(b) Basements, whether paved or not; or**
> >
> > **(c) Doors, windows or other openings; or**

3

> **(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.**
>
> **This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused….**

(Id. at p. 43-44.)

### D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in D.1. through D.7.
1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
1. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

(Id. at 49.)

### F. Additional Coverage Extensions

### 2. Water Damage, Other Liquids, Powder Or Molten Material Damage
If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**

c. Water damage means:
(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and
(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or

municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion….

To the extent that accidental discharge or leakage of water falls within the criteria set forth in [](1) or [](2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

(Id. at 51-52.)

CFS-103-FL (1-16)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SEWER OR DRAIN DEFINITION ENDORSEMENT—FLORIDA**
This insurance modifies insurance provided under the following:
CAUSES OF LOSS—BASIC FORM
CAUSES OF LOSS—BROAD FORM
CAUSES OF LOSS—SPECIAL FORM
**Under Section B. Exclusions, paragraph g. Water, subsection (3) the following is added:**

> **For the purpose of this exclusion, "sewer" and "drain" are defined as:**
>
> **2. "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;**
>
> **2. "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."**

(Id. at p.59.)

According to Plaintiff, "[o]n the date of loss, a decayed city sewer located directly

beneath the front entry of the building at the insured property suddenly and abruptly collapsed

and broke apart, preventing any water from draining down plumbing systems, specifically toilets

in the ladies' restroom.  Said another way, because the sewer line failed by collapsing and

breaking apart, human waste would not flush down the toilets." (Tad Balzer Aff. ¶ 4, DE 26-1.)

The sewer line that collapsed is a utility service supplied to the building. (Id. at ¶ 5.)  The sewer

line is also a plumbing system that is located on the insured premises, which contains water.  (Id.

at ¶ 6.)

      Plaintiff further asserts that according to the 2017 Florida Building Code – Plumbing, a

"plumbing system" is defined as "[a] system that includes the water distribution pipes; plumbing

fixtures and traps; water-treating or water-using equipment; soil, waste and vent pipes; and

building drains; in addition to their respective connections, devices and appurtenances within a

structure or premises; and the water service, building sewer and building storm sewer serving

such structure or premises*." (The Florida Building Code - Plumbing, Sixth Edition, Definitions,*

DE 26-2.)

      It is Plaintiff's contention that due to the sudden collapse of the sewer line of this

building, water was not carried on or away from the premises through the sewer lines. Sewage

was never introduced into the building from an outside source. Because the sewer line had

collapsed, water was not carried at all. (Balzer Aff. at ¶ 10.)

      Thus, according to Plaintiff, the water that never made it down the toilet is considered

IICRC Standard S500 Category 3, Black Water.   The IICRC provides that Black Water damage

is water damage to a home or business that is highly contaminated and could cause death or

serious illness to both humans and pets. Examples of Category 3 Black Water include water that

comes from toilet overflows, sewage back-ups, rising flood water from rivers and streams, storm

water damage that causes over-the-ground flooding, and sea water damage. Both the IICRC and

relevant public health standards mandate that property damaged by Category 3 Black Water must

have all organic building materials removed. Ergo, all wood, carpet, drywall, wallpaper, and

cloth that made contact with Category 3 Black Water must be removed and replaced. (Id. at ¶ 11.)

Plaintiff argues that Defendant did not hire an engineer to confirm what caused the sewer pipe and plumbing lines to fail. Nor did it hire a plumber to "jet" the plumbing line to determine the source of the blockage. (Id. at ¶ 12.)  Plaintiff did hire a plumber, VIP Construction, LLC, to excavate from the driveway to locate the collapsed sewer line. VIP Construction prepared an invoice reflecting the cost to excavate and reroute the plumbing lines at the property to connect to municipal sewage lines and temporarily and partially restore sanitary plumbing at the property. (Id. at ¶ 13.)  The failure of the sewer line beneath the building, which is a utility service, prevented water from being carried down toilets and through plumbing lines.  (Id. at ¶ 14.)  This breaking apart of the sewer line, a plumbing system located on the footprint of the building, resulted in the accidental leakage of black water from the ladies' restroom toilets. (Id. at ¶ 15.)

Defendant's motion for summary judgment contends that Plaintiff's loss was the result of a backup of water and/or sewage and falls within the policy's water damage exclusion, which excludes damage caused by water overflow from a sewer or drain, must be given full force and effect.  Defendant also contends that the "special cause of loss" water damage coverage provision upon which Plaintiff relies only applies to damages resulting from an off-premises sewer pipe leak.

Plaintiff responds that the toilet's plumbing and sewer lines are a "plumbing system" on the insured premises and are thereby covered as a "direct physical loss."  In addition, Plaintiff claims there was the failure of a utility service, which is also a covered loss.  Plaintiff further argues that the decayed sewage lines also fall under "additional coverage – collapse" as well as

under "water damage, other liquids, powder or molten material damage." Furthermore, Plaintiff argues that the water backup exclusion does not apply to Plaintiff's loss because the water did not originate from the premises. Lastly, Plaintiff states that the motion for summary judgment was only directed to the breach of contract claim, not the declaratory judgment claim.

II.   Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  When the nonmoving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991).

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574,

8

586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

Because the Court is sitting in diversity, Florida substantive law applies. Admiral Ins. Co. v. Feit Management Co., 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").  Under Florida law, a breach of contract action requires three elements: a valid contract, a material breach of that contract, and damages. See Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999); Miller v. Nifakos, 655 So.2d 192, 193 (Fla. Dist. Ct. App. 1995). It is undisputed that a valid insurance contract existed between the parties.

Under Florida law, the interpretation of an insurance policy is a question of law for the court. Technical Coating Applicators, Inc. v. U.S. Fidelity & Guaranty Co., 157 F.3d 843 (11th Cir. 1998); Arnold v. Life Ins. Co. of North America, 894 F.2d 1566 (11th Cir. 1990); Penzer v. Transportation Ins. Co., 29 So.3d 1000 (Fla. 2010). As a basic premise in this exercise, clear and

unambiguous policy terms should be given their plain, ordinary and generally accepted meaning. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528 (Fla. 2005); Union American Ins. Co. v. Maynard, 752 So. 2d 1266 (Fla. Dist. Ct. App. 2000). However, in applying the "plain meaning" rule, courts must not construe insurance policy provisions in isolation, but instead should read all terms in light of the policy as a whole, with every provision given its full meaning and operative effect. Auto–Owners Ins. Co. v. Anderson, 756 So.2d 29 (Fla. 2000); First Professionals Ins. Co. v. McKinney, 973 So.2d 510 (Fla. Dist. Ct. App. 2007).  Lastly, "[b]ecause they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20, 23 (Fla. Dist. Ct. App. 2011) (citation omitted).

The parties agree that the source of damage to Plaintiff's property was a water and/or sewer backup emanating underneath the driveway to the property. (Def. Statement of Facts ¶ 5, DE 25; Pl. Statement of Facts ¶ 5, DE 26.)  Thus, the Court must determine whether the policy's Water Exclusion applies to this loss. According to the Water Exclusion, Defendant "will not pay for loss or damage caused directly or indirectly by" "[w]ater" "that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment." (Policy at p. 43.)  Under the policy "sewer  .  .  .   means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises." (Id. at p. 59.)  The Policy's coverage for water damage expressly states that it does not encompass loss otherwise excluded under the Water Damage Exclusion. (Id. at p. 52.)  Based on this language, the Court concludes the Water Exclusion applies to this loss.

Plaintiff claims Defendant has failed to meet its burden of establishing that Plaintiff's loss arose from an excluded clause. (Resp. at 5.)  Plaintiff contends that, due to the collapse of

10

the sewer line and the breaking apart of the plumbing system, water stood still and could not be

carried in any direction, therefore making the Water Exclusion inapplicable. (Resp. at 2.)  There

is, however, no requirement that the water be actively flowing through the "underground pipe,

channel or conduit" at the exact moment of the loss. That would render meaningless the Policy's

water back-up/overflow exclusion, which addresses when backup and overflows occur due to

water being prevented from flowing through pipes.

Despite the undisputed facts that there was a "raw sewage backup" and a damaged

"sewer pipe" (Def. Statement of Facts ¶¶3-4; Pl. Statement of Facts ¶¶ 3-4), Plaintiff labels this

a failure of a "plumbing system," and claims damages involving a plumbing system are covered.

This attempt to recharacterize the type of loss does not change the fact that the loss emanated

from a sewage backup. To the extent that Plaintiff is attempting to find coverage under the

"Water Damage" provision, which pertains to plumbing systems,[1] that attempt is unavailing

because that provision does not apply.  Indeed, the plain policy language provides that "water

damage does not include loss or damage otherwise excluded under the terms of the 'Water

Exclusion.'" (Policy at p. 51-52.)

Furthermore, Plaintiff's reliance on the "water damage" provision that states "such water

is not subject to the provisions of the Water Exclusion, which preclude coverage for surface

water or water under the surface of the ground" is also misplaced (Id.)   This exception or

limitation on the Water Exclusion provision only applies to surface water (subsection 1 of the

Water Exclusion) or water under the ground surface (subsection 4 of the Water Exclusion).

Subsections 1 and 4 of the Water Exclusion are not at issue in this case, only subsection 3 (Water

---

[1] Water damage means: (1) Accidental discharge or leakage of water or steam as the direct result
of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or
appliance (other than a sump system including its related equipment and parts), that is located on
the described premises and contains water or steam." (Policy at p. 51-52.)

that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or

related equipment). Therefore, the Water Exclusion applies to the facts of this case.

Plaintiff places reliance on the case of Cameron v. Scottsdale Insurance Co., 726 F.

App'x 757 (11th Cir. 2018) to support its position.  There, the Court held that the water damage

exclusion "pertains to damage caused by water not originating from the residence premises'

plumbing system even though the water or water-borne material eventually backs up through a

pipe and/or drain within the plumbing system of the residence premises." Cameron v. Scottsdale

Ins. Co., 726 F. App'x 757, 762 (11th Cir. 2018).   The policy at issue here, however, differs

from the policy in Cameron.   As explained in John Raffell v. Scottsdale Ins. Co., Case no. 20-

21719-CIV-ALTONAGA (Jan. 8, 2021):

> Unlike the polic[y] in Cameron [ ], the Policy expressly defines "[d]rain" as any
> pipe, channel or conduit for carrying water, wastewater or sewage on or away from
> the premises . . . to a sewer[,]" establishing that damage caused by water, as used
> in subsection (3) of the Water Exclusion, includes water carried by drain pipes,
> channels, or conduits "on or away from" the Property. See also Policy (defining
> "[s]ewer" as "any underground pipe, channel or conduit for carrying water,
> wastewater or sewage on or away from the premises.") The addition of the
> definitions of "drain" and "sewer" — and specifically, the language "on or away
> from the premises" — to the Water Exclusion is significant and serves to expand
> its scope, not keep it consistent with [ ] Cameron's interpretations or narrow it. The
> polic[y] in Cameron [is] not identical in all material respects to the Policy, and thus,
> [ ] fail[s] to persuade.

Id. at 13 (some parentheticals omitted).[2]

Plaintiff also attempts to find coverage under the policy provision relating to the "failure"

of "[u]tility [s]ervices" that results in a "[c]overed [c]ause of [l]oss." (Resp. at 8.)  The Water

Exclusion language, however, states that "[s]uch loss or damage is excluded regardless of any

other cause or event that contributes concurrently or in any sequence to the loss." (Policy at 43.)

---

[2] Likewise, Plaintiff's reliance on Wohl Built, Inc. v. Maxum Indem. Co., No. 17-CV-80867, 2018 WL 5020194
(S.D. Fla. Apr. 19, 2018) and Cheetham v. Southern Oak Ins. Co., 114 So. 3d 257 (Fla. Dist. Ct. App. 2013) can be
distinguished on the same basis.

Hence, even if a covered loss contributed to Plaintiff's damages, this clause excludes the entire

loss. See Security First Ins. Co. v. Czelusniak, 305 So. 3d 717, 719 (Fla. Dist. Ct. App. 2020)

("[b]ecause evidence of water entering through the exterior walls and windows was undisputed

and is expressly excluded by the policy, the entire loss is excluded from coverage due to the anti-

concurrent cause provision regardless of any other cause or event contributing concurrently or in

any sequence to the loss.").

Equally unpersuasive is Plaintiff's reliance on  "[a]dditional [c]overage [e]xtensions" for

"[w]ater [d]amage, [o]ther [l]iquids, [p]owder [o]r [m]olten [m]aterial [d]amage" due to

"collapse" of a sewer line. "Collapse" requires the "abrupt collapse of a building or any part of a

building that is insured under this [c]overage [f]orm or that contains [c]overed [p]roperty insured

under this [c]overage [f]orm."  The sewer line is not covered under the Policy, making this

provision inapplicable. See Policy at p. 14 ("[c]overed property does not include underground

pipes, flues or drains"); see also Bird Rd. Shoppes, LLC v. Scottsdale Ins. Co., No. CV 18-

20001, 2019 WL 8892624 (S.D. Fla. Feb. 11, 2019) (finding that since the drain line pipes are

not covered by the policy, the collapse provision does not apply).

Lastly, the Court rejects Plaintiff's argument that Defendant is not entitled to summary

judgment on the declaratory judgment claim, even if the Court rules in Defendant's favor on the

breach of contract claim.[3] (Resp. at 15-16.)  Plaintiff's declaratory judgment count alleges in

part:

> This count for declaratory judgment concerns the interpretation and
> construction of contractual rights, obligations, and exclusions contained in
> the Policy and the facts surrounding the Claim - specifically, the parties'
> rights related to this recent loss as to the determination of the full coverage
> under the facts of this case and the interpretation of the Policy language at
> issue.

---

[3] In making this argument, Plaintiff notes that Defendant only moved for summary judgment on the breach of
contract claim.

(Complaint ¶ 27.)

Given that the Court has ruled that there is no coverage for Plaintiff's loss by virtue of the

breach of contract claim, the declaratory judgment claim is now moot. See Eisenberg v. Standard

Ins. Co., No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) (citing

Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc., No. 4:06-CV-1308 (CEJ), 2007 WL

2811080, *2 (E.D. Mo. 2007) ("decision on the merits of the breach of contract claim would

render the defendant's request for declaratory judgment moot or redundant.").

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendant's Motion for Summary Judgment (DE 24) is **GRANTED**.

2)      The Court will separately enter Judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 111th day of February, 2021.

KENNETH A. MARRA
United States District Judge